Todd A. Seaver (SBN 271067)
Matthew D. Pearson (SBN 235339)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382
Email: tseaver@bermantabacco.com
        mpearson@bermantabacco.com

*Attorneys for Plaintiffs*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM GARY, SEAN ADAIR, DANA CAMP, MATTHEW DEBONIS, SHAWN KIRKBRIDE, JOSEPH MCGUINNESS, and LI WANG individually and on behalf of all others similarly situated,<br><br>                       Plaintiffs,<br><br>v.<br><br>SANDISK LLC; WESTERN DIGITAL CORPORATION; WESTERN DIGITAL TECHNOLOGIES, INC.,<br><br>                       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT

Plaintiffs Tom Gary, ("Plaintiff Gary"), Sean Adair ("Plaintiff Adair"), Dana Camp ("Plaintiff Camp"), Matthew DeBonis ("Plaintiff DeBonis"), Shawn Kirkbride ("Plaintiff Kirkbride"), Joseph McGuinness ("Plaintiff McGuinness"), and Li Wang ("Plaintiff Wang" and collectively with Plaintiffs Gary, Adair, Camp, DeBonis, Kirkbride, and McGuinness, "Plaintiffs"), hereby allege the following against SanDisk LLC ("SanDisk"), Western Digital Corporation ("WD Corp" or "Western Digital Corp"), Western Digital Technologies, Inc. ("WD Tech" or "Western Digital Tech" and collectively with "WD Corp", "Western Digital") on behalf of themselves and all others similarly situated. Plaintiffs' complaint is based on personal knowledge, information and belief, the investigation of counsel, and public sources.

## NATURE OF ACTION

1.      Plaintiffs bring this action against Defendants on behalf of a class of persons (defined below) who purchased SanDisk Extreme Solid-State Drives and SanDisk Extreme PRO Solid-State Drives (the "SanDisk SSDs").

2.      The SanDisk SSDs are manufactured and sold to offer high-speed data transfer and storage. Storage capacity, speed, and durability are major selling points for the SanDisk SSDs as they are designed for photographers, videographers, and other creative professionals who work with large files, need to access them quickly, and work outside an office environment.

3.      Unfortunately, beginning in early 2023 users of the SanDisk SSDs began complaining in online forums—including forums on SanDisk's own website[1]—that the SanDisk SSDs are suddenly, and without warning, wiping data and, in some cases, becoming unreadable. In other words, the SSDs suddenly become worthless.

4.      After months of inaction, Defendant Western Digital finally admitted in May of 2023 the SanDisk SSDs had a firmware problem and released a firmware update that purported to resolve issues on *some* of the SanDisk SSDs that are regularly failing customers. At the time,

[1] https://forums.sandisk.com/c/portable-ssd/extreme-portable-ssd/235.

1   Western Digital announced that they "addressed this firmware issue in the manufacturing

2   process, and we can confirm that the issue is not impacting currently shipping products."

3        5.       However, Western Digital's purported fix has not resolved anything, and

4   consumers continue to have their products fail, causing them to lose the valuable data they stored

5   on the SanDisk SSDs, and defeating the purpose of owning a SanDisk SSD in the first place.

6        6.       These issues have had a material impact on the value of the SanDisk SSDs that

7   Plaintiffs purchased. Given the unreliability, Plaintiffs and class members can no longer

8   realistically use the SanDisk SSDs for fear of losing all of their data.

9        7.       In fact, a simple review of the available SanDisk SSDs on Amazon shows that

10  *Defendants* significantly discounted the SanDisk SSDs in an effort to offload inventory of these

11  defective SSDs.

12       8.       Plaintiffs and Class members, therefore, were injured when they purchased

13  defective SanDisk SSDs, and again as the SanDisk SSDs that they own have declined in value

14  and reliability.

15       9.       Given Western Digital's long-term knowledge of the SanDisk SSDs' defects and

16  their continued efforts to suppress that information from being disclosed to the public, Plaintiffs

17  believe that additional information supporting their claims will be uncovered following a

18  reasonable opportunity for discovery in this action.

19                          **JURISDICTION AND VENUE**

20       10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

21  §1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of

22  interest and costs, there are more than 100 putative members defined below, and minimal

23  diversity exists because a majority of putative class members are citizens of a state different from

24  Defendants.

25       11.      This Court has specific personal jurisdiction over Defendants SanDisk, WD Corp,

26  and WD Tech because they purposefully direct their conduct toward California, transact business

27

28

1   in this District and in California, engage in conduct that has had and continues to have a direct,

2   substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout

3   the United States, including those in this District and in California, and purposely availed

4   themselves of the laws of California.  Additionally, this Court has general personal jurisdiction

5   over Defendant SanDisk, Defendant WD Corp, and Defendant WD Tech because they are

6   headquartered in and have their principal places of business in California.

7        12.    This Court also has jurisdiction pursuant to 28 U.S.C. §1332(d), because the

8   amount in controversy exceeds $75,000 and is between citizens of different states.

9        13.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a

10  substantial portion of the conduct described in this Complaint was carried out in this District.

11  Furthermore, each Defendant maintains its principal place of business in this District.

12                              **DIVISIONAL ASSIGNMENT**

13       14.    Pursuant to Northern District of California Civil Local Rules 3-2(c) and 3-5(b),

14  assignment to the San Jose Division of this district is proper because a substantial part of the

15  events or omissions giving rise to the claims asserted herein occurred in Santa Clara County,

16  California, and Defendants' principal places of business are located in Santa Clara County,

17  California.

18                                    **PARTIES**

19       15.    Plaintiff Gary is a natural person domiciled in the State of Ohio.  In 2022,

20  Plaintiff Gary purchased various SanDisk Extreme PRO SSDs in various sizes and capacities,

21  including Extreme PRO 1TB, Extreme PRO 2TB and Extreme PRO 4TB. Despite being touted

22  as fast, rugged, and dependable, Plaintiff Gary has experienced the loss of data, read & write

23  errors, non-responsive devices, and devices unable to connect or be recognized by the computer

24  they are plugged into, on all of these drives. As a result of these defective devices, Plaintiff Gary

25  is now reluctant to use the SanDisk SSDs in the future.

26

27

28

16.     Plaintiff Adair is a natural person domiciled in the State of New York. In 2022, Plaintiff Adair purchased at least one SanDisk Extreme SSD, including Extreme PRO 2TB. Despite being touted as fast, rugged, and dependable, Plaintiff Adaire has experienced the complete failure of the SanDisk SSD and the loss of data, including the loss of a $12,000 video shoot after successfully transferring the data from his cameras' SanDisk HDSC card to the SanDisk SSD, which later appeared blank when Plaintiff Adair connected it to his computer for editing. Indeed, Plaintiff Adaire is now reluctant to use the SanDisk SSDs in the future.

17.     Plaintiff Camp is a natural person domiciled in the state of Connecticut. Between 2021 and 2023, Plaintiff Camp purchased at least one SanDisk Extreme SSD from Amazon.com, including Extreme 500GB. Despite being touted as fast, rugged, and dependable, Plaintiff Camp has experienced the device no longer being recognized when attaching to a computer, resulting in the loss of personal data. Indeed, Plaintiff Camp is now reluctant to use the SanDisk SSDs in the future.

18.     Plaintiff DeBonis is a natural person domiciled in the State of Florida. In 2023, Plaintiff DeBonis purchased at least three SanDisk Extreme SSDs from Amazon, including Extreme PRO 2TB and Extreme PRO 4TB. Despite being touted as fast, rugged, and dependable, Plaintiff DeBonis experienced complete failure on both Extreme Pro 4TB drives. Indeed, Plaintiff DeBonis is now reluctant to use the SanDisk SSDs in the future.

19.     Plaintiff Kirkbride is a natural person domiciled in the State of Missouri. In 2022, Plaintiff Kirkbride purchased at least one SanDisk Extreme SSDs from Amazon.com, including Extreme 2TB. Despite being touted as fast, rugged, and dependable, Plaintiff Kirkbride has experienced these drives failing to read on the computer, requiring reformat when plugged in, and missing data. Indeed, Plaintiff Kirkbride is now reluctant to use the SanDisk SSDs in the future.

20.     Plaintiff McGuinness is a natural person domiciled in the State of Georgia. In 2023, Plaintiff McGuinness purchased at least two SanDisk Extreme SSDs, including Extreme

PRO 2TB and Extreme PRO 4TB. Despite being touted as fast, rugged, and dependable, Plaintiff McGuinness has experienced the loss of data when both drives, at different times, were wiped after not being recognized by the computer. Indeed, Plaintiff McGuinness is now reluctant to use the SanDisk SSDs in the future.

21.     Plaintiff Wang is a natural person domiciled in the State of California. Between 2021 and 2023, Plaintiff Wang purchased at least two SanDisk Extreme SSDs from BestBuy, including Extreme 2TB. Despite being touted as fast, rugged, and dependable, Plaintiff Wang has experienced the loss of all data saved to the drive purchased in 2023 due to the drive suddenly became unreadable. Indeed, Plaintiff Wang is now reluctant to use the SanDisk SSDs in the future.

22.     Defendant SanDisk LLC is a business incorporated under the laws of the state of Delaware with its principal place of business at 951 SanDisk Drive, Milpitas, CA.

23.     Defendant Western Digital Corporation is a business incorporated under the laws of the state of Delaware with its principal place of business at 5601 Great Oaks Parkway, San Jose, CA. Western Digital Corporation is the parent company of a conglomerate of corporate entities, including defendants SanDisk LLC and Western Digital Technologies, Inc.

24.     Defendant Western Digital Technologies, Inc. is a business incorporated under the laws of the state of Delaware with its principal place of business at 5601 Great Oaks Parkway, San Jose, CA.  Western Digital Technologies, Inc. is the seller of record and licensee in the Americas of SanDisk products.

I.     **THE SANDISK EXTREME AND EXTREME PRO SOLID-STATE DRIVES**

25.     Defendants Western Digital Corp., Western Digital Tech., and SanDisk launched the SanDisk Extreme and Extreme PRO SSDs in 2018 at the Consumer Electronics Show (CES) in Las Vegas, Nevada. From the start, Defendants made clear that the SanDisk Extreme SSDs were developed for, among others, photographers and videographers who "require durable and

high-performance media capture solutions", and described the "the new, superfast SanDisk

Extreme® Portable SSD" as "perfect for saving and editing hi-res photos and videos on-the-go."

26.     Defendants also advertised the reliability and durability of the Extreme and

Extreme PRO SSDs, pointing out that the drives had an IP55 rating (meaning it could withstand

water and dust), and releasing videos showing photographers out in the wilderness using the

Extreme and/or Extreme PRO SSDs,[2] among other things.

27.      The SanDisk Extreme and Extreme PRO SSDs represented a significant

technological shift over the traditional digital data storage options of Hard Disk Drives (HDDs),

thumb drives, and memory cards. For example, HDDs have always been plagued by reliability

problems due to their mechanical nature and vulnerability to physical shocks in environments

that required mobility. In contrast, the Extreme and Extreme PRO SSDs, leveraging flash storage

technology, eliminated moving parts entirely. This not only enhanced durability but also enabled

faster data access and writing speeds, far outpacing HDDs.

28.     Compared to thumb drives and memory cards, which also use flash storage, the

Extreme and Extreme PRO SSDs offer a more robust storage solution in terms of capacity.

While thumb drives and memory cards are designed for portability and might suffice for casual

storage needs, they often fall short when it comes to storing larger files or managing high-quality

content demands, such as those of professional photographers and videographers. The SanDisk

SSDs not only provided substantially greater storage capacity but were also purpose-built to

handle the rigors of professional content creation.

29.     In 2020, Defendants unveiled an "enhanced" line of Extreme and Extreme Pro

SSDs dubbed version 2, offering "nearly 2x the speed over previous generations".[3] In its official

press release, Defendants noted that the SanDisk Extreme and SanDisk Extreme PRO portable

---

[2]  SanDisk Extreme Portable SSD | Official Product Overview,
https://www.youtube.com/watch?v=on0B70waoM8 (accessed Aug. 11, 2023).

[3] https://www.westerndigital.com/company/newsroom/press-releases/2020/2020-09-30-western-digital-unveils-enhanced-line-of-sandisk-extreme-portable-ssds (accessed Aug. 15, 2023).

SSDs "are purpose-built to keep up with today's high-quality content demands. Professional photographers, videographers and enthusiasts capture and keep life's best moments every day *and they need reliable solutions that perform on the move at astonishing speeds*." (emphasis added).

## II.    THE SANDISK EXTREME AND EXTREME PRO SSD'S SOLD BY DEFENDANTS ARE DEFECTIVE

30.    In early 2023, SanDisk SSD purchasers began reporting abrupt SanDisk SSD failures resulting in the permanent loss of their data.

31.    For example, a video production professional posted the following description of SanDisk SSD failures on Reddit:

> Multiple DITs/Loaders/ACs on both coasthave [sic] experienced the exact same failure with these drives over the last month. The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot wether [sic] you can recover it or not. The primary way you will see this is that the drive will unmount and you will not be able to get it to mount again, despite showing up in Disk Utility. You can sometimes recover it using DiskDrill's filesystem rebuild, but occasionally that does nothing. It persists with any filesystem type.
>
> *A few of us are working with a colleague at SanDisk to try and get this addressed*, but in the meantime we're collecting data to prove to SanDisk that it actually is more than a fluke . . . If you've experienced this, we would really appreciate it if you would log it at this form with as much of the information that you have. We promise we aren't selling your info, only sending the failures direct to SanDisk so they can hopefully track down the root of the issue. https://notionforms.io/forms/drivetracker/[4] (emphasis added)

32.    Similarly, another SanDisk SSD purchasers reported the following:

> I bought [a SanDisk Extreme Pro External 4TB SSD] on Thursday from B&H. Arrived Friday and I formatted it to I believe macos extended journaled, then loaded it up with a bunch of essentially irreplaceable photos without much thought. This morning I uploaded a bunch of them to my Cryptomater iCloud vault to show a friend. I come back a few hours later and I can't view the files on this drive and I eject it, plug it back in and it won't mount, but I can see it in disk utility and it knows it's 4TB.[5]

---

[4] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/

[5] https://www.reddit.com/r/datarecovery/comments/106s7n3/sandisk_extreme_pro_external_4tb_ssd_failing_to/





33.    And another user claiming to be a videography professional reported the following experience:

> Take my advice and stay away. Yesterday was the second time my 4TB Extreme Portable SSD v2 crapped out on me -- greyed out in Disk Utility and unmountable. I tried different USB-C cables, switched out the directions, rebooted my computer (MBP'21 M1max), everything I could. Sandisk customer support is a joke.
>
> And this was also the **second time** this drive corrupted. Formatting it fixed it the first time but that's not an option anymore because how am I supposed to rely on an SSD for video editing if it corrupts itself randomly? (and yes, I safely ejected it every time even though you don't technically have to do that if the drive is plugged in but idle). Thankfully I had my files backed up in 2 other places so my work isn't lost, but I'm out about $400 now. Currently trying to return it to B&H.[6]

34.    Despite the slew of complaints and the apparent willingness of some victims to try and work with SanDisk to resolve the issue, Defendants refused to acknowledge the widespread issue for months and mostly referred purchasers of SanDisk SSDs who experienced drive failures to open a support ticket with SanDisk's technical support team.

35.    This only changed in May 2023, when multiple media outlets picked up the story and contacted Defendants for comment in advance of publication.

36.    The stories from media outlets like *The Verge* and *ARS Technica* covering the SanDisk SSD issues noted the commonality of complaints and even featured personal experiences of the media outlets' own employees or their friends. For example, The Verge author Sean Hollister noted that "Over two months ago, my friend and Verge supervising producer Vjeran Pavic told me he'd lost an entire 4TB SanDisk Extreme Pro worth of video clips. Completely gone with no trace"[7] and the *Ars Technica* story included the following experience of an *Ars Technica* employee:

---

[6] https://www.reddit.com/r/videography/comments/1191jw0/rant_sandisk_extreme_portable_ssds_are_horrible/

[7] Sean Hollister, *Buyer beware: some SanDisk Extreme SSDs are wiping people's data*, The Verge, (May 22, 2023), https://www.theverge.com/2023/5/22/23733267/sandisk-extreme-pro-failure-ssd-firmware (accessed Aug. 15, 2023)

Ars Technica's Lee Hutchinson confirmed suffering not one, but two 2TB Extreme Pros dying. After filling about halfway, each drive met a slew of read and write errors. When he disconnected and reconnected the SSD, it showed it was unformatted with the drive completely wiped, including its file system. Wiping and reformatting didn't help, and this happened with two different units.

Lee's story is echoed by many people, including those on SanDisk's forums, who bought one of the external SSDs within the past few months. The problem seems to only affect a recent batch of drives, with one user claiming they were told via a Japanese distributor that "this problem is causing a fuss and is only for those manufactured after November 2022" (Ars couldn't confirm this). The Reddit user ian__, who claimed to be collecting error reports to share with SanDisk, agreed that the issue only affects recent batches. And some users said they used several Extreme and Extreme Pros over the years but only saw ones purchased recently fail.[8]

37.     Defendants only responded after authors from multiple news outlets contacted them in advance of publishing stories highlighting the issue. At that point, Western Digital gave its first admission that the SanDisk SSDs were defective, but claimed to have developed a fix, telling a reporter:

Western Digital is aware of reports indicating some customers have experienced an issue with 4TB SanDisk Extreme and/or Extreme Pro portable SSDs (SDSSDE61-4T00 and SDSSDE81-4T00 respectively). We have resolved the issue and will publish a firmware update to our website soon. Customers with questions or who are experiencing issues should contact our Customer Support team for assistance.

## III.    DEFENDANTS' DELAYED RESPONSE AND FIRMWARE UPDATE HAS NOT FIXED THE ISSUE.

38.     Defendants published a firmware update in late May 2023 which they claimed fixed the issues shortly after the slew of stories on the defective SanDisk SSDs were published in late May 2023 "We addressed this firmware issue in the manufacturing process, and we can confirm that the issue is not impacting currently shipping products."

39.     But unfortunately for Plaintiffs and class members, this is untrue. The firmware update has not fixed the defective SanDisk SSDs, and the SanDisk SSDs are still failing post-firmware update, resulting in permanent data loss.

---

[8] Scharon Harding, *SanDisk Extreme SSDs keep abruptly failing—firmware fix for only some promised*, Ars Technica (May 19, 2023), https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/ (accessed Aug. 15, 2023).

40.     On August 7, 2023, Verge reporter Sean Hollister (author of the original Verge article covering the SanDisk SSDs defect), reported that purchasers and users of defective SanDisk SSDs continue to report widespread data loss issues with the SanDisk SSDs even after installing the firmware update, and included an example from his own colleague:

> My colleague Vjeran just lost 3TB of video we'd shot for The Verge because the drive is no longer readable



> This isn't a drive he purchased many months or years ago — it's the supposedly safe replacement that Western Digital recently sent after his original wiped his data all by itself. SanDisk issued a firmware fix for a variety of drives in late May, shortly after our story. They sent out Vjeran's replacement in early June. He'd just begun to trust it with work files again.[9]

---

[9] Sean Hollister, *We just lost 3TB of data on a SanDisk Extreme SSD*, The Verge (Aug. 7, 2023), https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued (accessed Aug. 15, 2023).

1      41.    And *Ars Technica* reported that users have reported similar experiences on

2  Reddit, even after installing the firmware updated. For example, *Ars Technica* published the post

3  of user Natural-Opposite-633 on Reddit posted on July 26 that they updated their 4TB Extreme

4  SSD's firmware:

> ... about a week after that, I was transferring some files from my Android device to
> it, and it did the same thing, unmounted and would no longer mount unless you
> formatted it. The data could be recovered with Diskdrill, but with generic serialized
> names. ... I have 4 of these drives in total, one 4TB and one 2TB that are not flagged
> as being affected and have been pretty solid. One new 4TB that was flagged as
> being affected and [had] data loss twice as described above, and one new 4TB I got
> through an Amazon sale that I'm regretting buying.[10]

9      42.    Thus, despite Defendants' claims that the firmware update fixed the defective

10  SanDisk SSDs, consumers continue to report drive failures and data loss with the SanDisk

11  Extreme and SanDisk Extreme PRO, solid-state drives.

12      43.    This example underscores one of the fundamental problems with SanDisk's

13  response to its defective products.

14      44.    SanDisk's online store is supposed to support refunds within 30 days. The drives

15  have a five-year limited warranty, which states customers can "return the Product after first

16  obtaining a Return Material Authorization number and following any other guidelines listed. For

17  further information see shop.westerndigital.com/sandisk and select 'support.'"

18      45.    It also says SanDisk can "repair or replace the Product with a new reconditioned

19  or refurbished Product of equal or greater capacity, or another equivalent product" or "refund the

20  current market value" if SanDisk can't repair or replace it.

21      46.    However, a new or repaired drive doesn't address the loss of data – from a

22  product whose sole purpose was to store data.

23

24

25  _____

[10] Scharon Harding, *SanDisk's silence deafens as high-profile users say Extreme SSDs still broken*, Ars
26  Technica (Aug. 10, 2023), https://arstechnica.com/gadgets/2023/08/sandisk-extreme-ssds-are-still-
wiping-data-after-firmware-fix-users-say/ (accessed Aug. 15, 2023).

27

28

**IV.    THE SANDISK SSD DEFECT RENDERS THE SANDISK SSDS WORTHLESS**

47.    The purpose of the SanDisk SSDs, as advertised and intended by Defendants, was to safely, securely, and reliably store digital data.

48.    The information described above, including the now-known issues with the defective SanDisk SSDs and significant risk of permeant data loss, has rendered the SanDisk SSDs worthless to individuals seeking reliable data storage.

49.    Individuals cannot rely on the SanDisk SSDs because they contain, or materially risk containing, defects which cause the substantial loss of personal information – the very purpose for which these SanDisk SSDs exist.

50.    As a result of the above, Plaintiffs and the Class have suffered damages in the form of permanent loss of digital data and will have to undertake considerable expense to replace the defective SanDisk SSDs with non-defective SSDs capable of performing the functions Defendants promised the SanDisk SSDs would perform.

**V.    DEFENDANTS HAVE CONTINUED SELLING DEFECTIVE SANDISK SSDS WHILE DOWNPLAYING THE DEFECT**

51.    Rather than pull the defective SanDisk SSDs from the shelves via recall, Defendants have instead continued selling the defective SanDisk SSDs.

52.    When reports first started surfacing, but before national media coverage, Defendants steeply discounted the defective SanDisk SSDs in what appeared to be an effort offload defective products on a then-uninformed consumer base. For example, the following screenshot from SanDisk's Amazon store shows that SanDisk was offering a 67% discount on SanDisk SSDs in May 2023:

1
2
3
4
5
6
7
8
9
10
11

**MAY 2023**



12    53.    And today, despite the information and events described above, Defendants are

13    still selling defective SanDisk SSDs at significant discounts:

14
15

**AUGUST 15, 2023**

16
17
18
19
20
21
22
23
24
25



26
27
28

54.    Defendants are thus flooding the market with defective devices while simultaneously failing to fix the defective devices already in customers' hands. These actions are exacerbating the harm to the general public as they are causing additional consumers to purchase virtually worthless devices which are incapable of performing their core intended function.

## CLASS ACTION ALLEGATIONS

55.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and as representatives of the following Class:

> All persons who reside in and purchased a SanDisk SSDs in the United States since 2020[11] ("the Class").

56.    Plaintiffs reserve the right to modify, expand or amend the above Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## CALIFORNIA SUBCLASS

57.    Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following California Subclass:

> All persons who reside in and purchased a SanDisk Extreme SSD in the State of California since 2020 (the "California Subclass").

58.    Plaintiffs reserve the right to modify, expand or amend the above California Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## CONNECTICUT SUBCLASS

59.    Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following Connecticut Subclass:

---

[11] Plaintiffs have defined the Class and Subclasses based on currently available information and hereby reserve the right to amend the definition of the Class and/or Subclasses, including, without limitation, membership criteria and the Class Period

All persons who reside in and purchased a SanDisk Extreme SSD in the State of Connecticut since 2020 (the "Connecticut Subclass").

60.     Plaintiffs reserve the right to modify, expand or amend the above Connecticut Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## FLORIDA SUBCLASS

61.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following Florida Subclass:

All persons who reside in and purchased a SanDisk Extreme SSD in the State of Florida since 2020 (the "Florida Subclass").

62.     Plaintiffs reserve the right to modify, expand, or amend the above Florida Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## GEORGIA SUBCLASS

63.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following Georgia Subclass:

All persons who reside in and purchased a SanDisk Extreme SSD in the State of Georgia since 2020 (the "Georgia Subclass").

64.     Plaintiffs reserve the right to modify, expand, or amend the above Georgia Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discover.

## MISSOURI SUBCLASS

65.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following Missouri Subclass:

All persons who reside in and purchased a SanDisk Extreme SSD in the State of Missouri since 2020 (the "Missouri Subclass").

66.     Plaintiffs reserve the right to modify, expand, or amend the above Missouri Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

**NEW YORK SUBCLASS**

67.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following New York Subclass:

> All persons who reside in and purchased a SanDisk Extreme SSD in the State of New York since 2020 (the "New York Subclass").

68.     Plaintiffs reserve the right to modify, expand, or amend the above New York Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

**OHIO SUBCLASS**

69.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on behalf of the following Ohio Subclass:

> All persons who reside in and purchased a SanDisk Extreme SSD in the State of Ohio since 2020 (the "Ohio Subclass" collectively with the California Subclass, Connecticut Subclass, Florida Subclass, Georgia Subclass, Missouri Subclass, and New York Subclass, the "Subclasses").

70.     Plaintiffs reserve the right to modify, expand, or amend the above Ohio Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

71.     **Ascertainability**. The proposed Class and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Class and Subclasses can be readily identified through records maintained by Defendants.

72.     **Numerosity (Rule 23(a)(1))**. The Class and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of Class or Subclass

members, as herein identified and described, is not known, but Defendants have sold at least thousands of defective SanDisk SSDs.

73. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a.    whether the SanDisk SSDs had a material defect;

b.    whether Defendants knew of should have known that the SanDisk SSDs had a defect;

c.    whether Defendants had a duty to disclose, and wrongfully failed to disclose, that the SanDisk SSDs had a defect;

d.    whether Defendants misrepresented material facts and/or failed to disclose materials facts in connection with the manufacturing, packaging, labeling, marketing, distribution, and sale of the SanDisk SSDs;

e.    whether Defendants' representations and omissions on the labeling of the SanDisk SSDs are likely to mislead, deceive, confuse or confound consumers acting reasonably;

f.    whether Defendants represented to consumers that the SanDisk SSDs have characteristics, benefits, or qualities that they do not have;

g.    whether Defendants had knowledge that their representations and/or omissions were false, deceptive, and/or misleading;

h.    whether Defendants continue to make representations and/or omissions despite knowledge that the representations and/or omissions are false, deceptive, and/or misleading;

i.    whether Defendants breached their express warranties;

j.    whether Defendants breached their implied warranties;

k.    whether Defendants engaged in fraudulent, deceptive, misleading, unlawful, and/or unfair trade practices;

l.    whether Defendants engaged in false advertising;

m.    whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

n.    whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages;

o.    whether Defendants unjustly retained a benefit such that restitution is appropriate; and

p.    whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

74.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the proposed Class and Subclasses. Plaintiffs and the Class and Subclasses (as applicable) suffered injuries because of Defendants' wrongful conduct that is uniform across the Class and Subclasses.

75.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to represent and protect the interests of the Class and Subclasses fairly and adequately. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

76.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The

prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

77.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class and Subclasses, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

78.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

79.     In the alternative, the common questions of fact and law, *supra*, are appropriate for issue certification on behalf of the proposed Class and Subclasses under Fed. R. Civ. P. 23(c)(4).

80.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### CLAIM 1
### BREACH OF EXPRESS WARRANTY

81.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants for breach of express warranty.

83.    Defendants manufactured, distributed, packaged, labeled, marketed, and sold the SanDisk SSDs into the stream of commerce with the intent that the SanDisk SSDs would be purchased by Plaintiffs and the Class and Subclasses.

84.    Defendants expressly warranted, advertised, and represented to Plaintiffs and the Class and Subclasses that the SanDisk SSDs were effective at storing Plaintiffs' and Class Members' data.

85.    Defendants made these express warranties regarding the SanDisk SSDs' quality and fitness for use in writing through its website, advertisements, and marketing materials and on the SanDisk SSDs' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class and Subclasses entered into upon purchasing the SanDisk SSDs. These affirmations of fact and/or promises became part of the basis of the bargain, and the contract, that Plaintiffs and the Class and Subclasses entered into with Defendants upon purchasing the SanDisk SSDs.

86.    Defendants' advertisements, warranties, and representations were made in connection with the sale of the SanDisk SSDs to Plaintiffs, the Class, and the Subclasses. Plaintiffs, the Class, and the Subclasses relied on Defendants' advertisements, warranties, and representations regarding the SanDisk SSDs in deciding whether to purchase Defendants' products.

87.    Defendants' products do not conform to Defendants' affirmations of facts and promises in that they are not effective at storing data.

88.     Defendants therefore breached their express warranties by placing products into the stream of commerce and selling them to consumers, when their use had negative effects, and were unusable for their stated purpose, rendering these products unfit for their intended use and purpose, and unsuitable for consumer use as marketed by Defendants. These associated defects substantially impair the use, value, and safety of the SanDisk SSDs.

89.     Defendants were aware, or should have been aware, of the presence of the defects in the SanDisk SSDs and therefore were aware or should have been aware of effects of the use of the SanDisk SSDs on consumers, but nowhere on the package labeling or on Defendants' websites, or other marketing materials, did Defendants warn Plaintiffs and members of the Class and Subclasses of the potential for loss of data from the SanDisk SSDs.

90.     Instead, Defendants concealed the defect in the SanDisk SSDs and deceptively represented that the SanDisk SSDs were safe, of a certain quality, fast, rugged, were effective at storing data, and appropriate for use. Defendants thus utterly failed to ensure that the material representations they were making to consumers were true.

91.     The defects were present in the SanDisk SSDs when they left Defendants' possession or control and were sold to Plaintiffs and members of the Class and Subclasses. The dangers associated with use of the SanDisk SSDs were undiscoverable by Plaintiffs and members of the Class and Subclasses at the time of purchase of the SanDisk SSDs.

92.     Defendants are the manufacturers, marketers, advertisers, distributors, labelers, and sellers of the SanDisk SSDs and thus had exclusive knowledge and notice of the fact that the SanDisk SSDs did not conform to the affirmations of fact and promises.

93.     In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

94.     Defendants' affirmations of fact and promises were material, and Plaintiffs and members of the Class and Subclasses reasonably relied upon such representations in purchasing the SanDisk SSDs.

95.     All conditions precedent to Defendants' liability for their breaches of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

96.     Affording Defendants an opportunity to cure their breaches of written warranties would be unnecessary and futile here. Defendants had ample opportunity to test their products for defects and to modify their manufacturing processes to ensure the defect was not present in the SanDisk SSDs to make them effective for use by Plaintiffs and members of the Class and Subclasses.

97.     As a direct and proximate result of Defendants' breaches of express warranty, Plaintiffs and members of the Class and Subclasses have been damaged because they did not receive the products as specifically warranted by Defendants. Plaintiffs and members of the Class and Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their payment and/or overpayment for the SanDisk SSDs.

98.     Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## CLAIM 2
## BREACH OF IMPLIED WARRANTY

99.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

100.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants for breach of implied warranty of merchantability.

101.    Defendants are merchants, manufacturers, marketers, warrantors, and sellers of goods – the SanDisk SSDs – to Plaintiffs and the Class and Subclasses and knew or had reason to know of the specific use for which the SanDisk SSDs were purchased.

102.    Plaintiffs and the proposed Class and Subclasses are consumers who purchased the SanDisk SSDs manufactured, sold, and marketed by Defendants throughout the United States.

103.    An implied warranty that the SanDisk SSDs were merchantable arose by operation of law as part of the sale of the SanDisk SSDs.

104.    At all times mentioned herein, Defendants manufactured, distributed, or supplied the products, and prior to the time the SanDisk SSDs were purchased by Plaintiffs and members of the Class and Subclasses, Defendants impliedly warranted to them that the SanDisk SSDs were of merchantable quality, fit for their ordinary and intended use, and conformed to the promises and affirmations of fact made on the SanDisk SSDs labels and packaging, including that the SanDisk SSDs were effective at storing data. Plaintiffs and the Class and Subclasses relied on Defendants' promises and affirmations of fact when they purchased the SanDisk SSDs.

105.    Defects existed in the SanDisk SSDs when the SanDisk SSDs left Defendants' possession or control and were sold to Plaintiffs and members of the proposed Class and Subclasses. The presence of defects in the SanDisk SSDs was undiscoverable by Plaintiffs and members of the proposed Class and Subclasses at the time of their purchases.

106.    Contrary to these representations and warranties, the SanDisk SSDs were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendants and did not conform to Defendants' affirmations of fact and promises as use of the SanDisk SSDs was accompanied by the risk of failure or data loss, which does not conform to the packaging.

107.    Defendants breached their implied warranties by selling products that failed to conform to the promises or affirmations of fact made on the packaging or label. Defendants had,

1    and have, exclusive knowledge of the material facts concerning the defective nature of the

2    SanDisk SSDs.

3    108.    Defendants were, or should have been, on notice of this breach, as they were on

4    notice that the process used to manufacture the SanDisk SSDs was likely to result in the presence

5    of defects in the SanDisk SSDs.

6    109.    Privity exists because Defendants impliedly warranted to Plaintiffs and the Class

7    and Subclasses through the warranting, packaging, advertising, marketing, and labeling that the

8    SanDisk SSDs were suitable for use and made no mention of the defects or loss of data

9    associated with use of the SanDisk SSDs.

10    110.    Furthermore, Plaintiffs and members of the proposed Class and Subclasses were

11    at all material times the intended third-party beneficiaries of Defendants and their agents in the

12    distribution of the sale of their products. Defendants exercise substantial control over the outlets

13    that sell the SanDisk SSDs, which are the same means by which Plaintiff and members of the

14    proposed Class and Subclasses purchased the SanDisk SSDs. Defendants' warranties are not

15    intended to apply to distributors but are instead intended to apply to consumers, including

16    Plaintiffs and the proposed Class and Subclasses, to whom Defendants directly markets through

17    labels and product packaging, and who review the labels and product packaging in connection

18    with their purchases. As a result, the warranties are designed and intended to benefit the

19    consumers, including Plaintiffs and the proposed Class and Subclasses, who purchase the

20    SanDisk SSDs. Privity therefore exists based on the foregoing and because Defendants impliedly

21    warranted to Plaintiffs and the proposed Class and Subclasses through the packaging that the

22    SanDisk SSDs were safe and suitable for their intended use.

23    111.    As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and

24    the Subclasses have suffered actual damages in that each of the SanDisk SSDs they purchased is

25    worth less than the price they paid and/or that they would not have purchased at all if they had

26

27

28

1   known of the attendant loss of data and defects associated with the use of each of the SanDisk

2   SSDs.

3       112.    Plaintiffs, the Class, and the Subclasses seek actual damages, injunctive and

4   declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder

5   for Defendants' failure to deliver goods conforming to their implied warranties and resulting

6   breach.

7

8                                    **CLAIM 3**
                        **FRAUDULENT MISREPRESENTATION**

9       113.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

10      114.    Plaintiffs bring this claim individually and on behalf of the members of the

11  proposed Class and Subclasses against Defendants for fraudulent misrepresentation.

12      115.    Defendants falsely represented to Plaintiffs, the Class, and the Subclasses that the

13  SanDisk SSDs were of a certain quality, fast, rugged, reliable, and fit for their intended use. The

14  SanDisk SSDs, however, contained defects, which had a significant risk of causing the loss of

15  data, which does not conform to the packaging. Therefore, Defendants has made

16  misrepresentations about the SanDisk SSDs.

17      116.    Defendants' misrepresentations regarding the SanDisk SSDs are material to a

18  reasonable consumer because they relate to the quality, speed, and reliability of the SanDisk

19  SSDs. A reasonable consumer would attach importance to such representations and would be

20  induced to act thereon in deciding whether or not to purchase the SanDisk SSDs.

21      117.    Defendants intentionally, knowingly, and recklessly made these

22  misrepresentations to induce Plaintiffs, the Class, and the Subclasses to purchase the SanDisk

23  SSDs.

24      118.    Defendants knew that their representations about the SanDisk SSDs were false, or

25  that there was a significant likelihood that they were false, in that the SanDisk SSDs either did,

26  or likely did, have defects which does not conform to the SanDisk SSDs' labels, packaging,

27

28

CLASS ACTION COMPLAINT                                                                    26

advertising, and statements. Defendants knowingly allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs, the Class, and the Subclasses.

119.    Plaintiffs, the Class, and the Subclasses did in fact rely on these misrepresentations and purchased SanDisk SSDs to their detriment. Given the deceptive way Defendants advertised, represented, and otherwise promoted the SanDisk SSDs, the reliance Plaintiffs, the Class, and the Subclasses placed on Defendants' misrepresentations was justifiable.

120.    As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclasses have suffered actual damages in that they purchased SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known of the risk of the presence of defects in the SanDisk SSDs and the risks associated with the use of the SanDisk SSDs that does not conform with the SanDisk SSDs' labels, packaging, advertising, and statements.

121.    Plaintiffs, the Class, and the Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM 4
## FRAUD BY OMISSION

122.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

123.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants for fraud by omission.

124.    Defendants actively and knowingly concealed from and failed to disclose to Plaintiffs, the Class, and the Subclasses that use of SanDisk SSDs is accompanied by a risk of data loss which does not conform to the SanDisk SSDs' labels, packaging, advertising, and statements.

125.    Defendants were under a duty to disclose to Plaintiffs, the Class, and the Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the SanDisk SSDs because: (a) Defendants were in a superior position to know the true state of facts about their products; (b) Defendants were in a superior position to know the risks associated with the use of, characteristics of, and suitability of the SanDisk SSDs for use by individuals; (c) Defendants knew that Plaintiffs, the Class, and the Subclasses could not reasonably have been expected to learn or discover that the SanDisk SSDs were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the SanDisk SSDs; (d) Defendants' packaging and labels disclosed misleading information to consumers by omitting that the SanDisk SSDs contain defects; and (e) based on Defendants' partial statements on the SanDisk SSDs' labels and packaging that gave a misleading impression to reasonable consumers that the SanDisk SSDs are suitable for use, without further information on the presence defects had not been disclosed, Defendants assumed the obligation to make a full and fair disclosure of the whole truth.

126.    Defendants know their customers trust the quality of their products and that they expect the SanDisk SSDs to be suitable for use and to not have risk of data loss.

127.    Due to the omissions on the SanDisk SSDs' packaging, Defendants had a duty to disclose the whole truth about the presence, and material risk, in the SanDisk SSDs to Plaintiffs and the proposed Class and Subclasses. Defendants failed to discharge their duty to disclose the presence of defects in the SanDisk SSDs.

128.    The facts concealed or not disclosed by Defendants to Plaintiffs, the Class, and the Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase the SanDisk SSDs.

129.    Plaintiffs and the Class and Subclasses justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and risk

associated with the use of SanDisk SSDs, which is inferior when compared to how the SanDisk SSDs are advertised and represented by Defendants.

As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclasses have suffered actual damages in that they purchased SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known of the health risks associated with the use of the SanDisk SSDs which do not conform to the SanDisk SSDs' labels, packaging, advertising, and statements.

130.    Plaintiffs, the Class, and the Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM 5
## NEGLIGENT MISREPRESENTATION

131.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

132.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants for negligent misrepresentation.

133.    Because Defendants have superior knowledge regarding the quality of their products and because Plaintiffs and members of the proposed Class and Subclasses trust and rely on Defendants to provide accurate and truthful information regarding the SanDisk SSDs, which Plaintiffs and members of the proposed Class and Subclasses cannot ascertain on their own, Defendants had a duty to Plaintiffs, the Class, and the Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of SanDisk SSDs.

134.    Defendants breached their duty to Plaintiffs, the Class, and the Subclasses by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs, the Class, and the Subclasses that did not have the qualities, characteristics, and suitability for use as advertised by Defendants.

135.    Defendants packaged, labeled, marketed, and advertised the SanDisk SSDs in a manner indicating that the SanDisk SSDs were and are, among other things, suitable for use. However, the SanDisk SSDs contained, or were at risk of containing, defects, which did not conform to the packaging. Therefore, Defendants made misrepresentations about the SanDisk SSDs.

136.    Defendants' misrepresentations regarding the SanDisk SSDs are material to a reasonable consumer because they relate to the quality of the SanDisk SSDs, which the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the SanDisk SSDs.

137.    At all relevant times when such misrepresentations were made, Defendants knew or had been negligent in not knowing that the SanDisk SSDs contained, or were at risk of containing, defects which caused the loss of consumers' data. Defendants had no reasonable grounds for believing their misrepresentations were not false and misleading.

138.    Defendants knew or should have known that the qualities and characteristics of the SanDisk SSDs were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Defendants yet continued selling the SanDisk SSDs. Specifically, Defendants knew or should have known that: (a) the manufacturing process used to produce the SanDisk SSDs resulted in the presence of defects in the SanDisk SSDs or a substantial risk that defects would be found in the SanDisk SSDs, and (b) the SanDisk SSDs were otherwise not as warranted and represented by Defendants.

139.    Defendants intended that Plaintiffs and members of the proposed Class and Subclasses would rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the SanDisk SSDs' packaging by Defendants, as well as their advertising, marketing, and labeling of the SanDisk SSDs as, among other things, suitable for use.

140.    Plaintiffs and members of the proposed Class and Subclasses have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the SanDisk SSDs, and had the correct facts been known, would not have purchased the SanDisk SSDs at all, or would have paid less for them.

141.    As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclasses have suffered actual damages in that they purchased the SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known they contained, or had a material risk of containing, defects that caused substantial loss of personal data, which does not conform to the products' labels, packaging, advertising, and statements.

142.    Plaintiffs, the Class, and the Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## CLAIM 6
## UNJUST ENRICHMENT

143.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

144.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants for unjust enrichment.

145.    Plaintiffs, the Class, and the Subclasses conferred substantial benefits on Defendants through their purchase and use of the SanDisk SSDs. Defendants knowingly and willingly accepted and enjoyed these benefits. Defendants either knew or should have known that the payments rendered by Plaintiffs, the Class, and the Subclasses were given with the expectation that the SanDisk SSDs would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances when Plaintiffs and the proposed Class and Subclasses did not receive the benefit of the SanDisk SSDs for which they bargained.

146.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs, the Class, and the Subclasses because Defendants' labeling of the SanDisk SSDs was misleading to consumers, which caused injuries to Plaintiffs and the proposed Class and Subclasses because they would not have purchased the SanDisk SSDs or would have paid less for the SanDisk SSDs had they known that they contained, or had a material risk of containing defects which caused the substantial loss of personal data.

147.    As a direct and proximate result, Plaintiffs, the Class, and the Subclasses are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

148.    Plaintiffs and the proposed Class and Subclasses seek restitution, disgorgement, imposition of a constructive trust, and/or other appropriate injunctive and declaratory relief, and any other just and proper relief available under the laws.

### CLAIM 7
### CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
#### Cal. Civ. Code §1750 *et seq.*
#### (On behalf of Plaintiffs Wang and the California Subclass)

149.    Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

150.    Defendants conduct with respect to the SanDisk SSDs took place in substantial part within California.

151.    Plaintiff Wang has also filed an affidavit in accordance with Cal. Civ. Code §1780 concurrently with this Complaint.

152.    Plaintiff Wang and members of the California Subclass are "consumer[s]" as that term is defined in Cal. Civ. Code §1761(d).

153.    The SanDisk SSDs are "goods," as that term is defined in Cal. Civ. Code §1761(a).

154.    Each Defendant is a "person" as that term is defined in Cal. Civ. Code §1761(c).

155. Each purchase of the SanDisk SSDs by Plaintiffs Wang and members of the California Subclass constituted a "transaction" as that term is defined in Cal. Civ. Code §1761(e).

156. Defendants' conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

    a.    Cal. Civ. Code §1770(a)(5), by negligently, recklessly, and/or intentionally representing that the SanDisk SSDs were effective when in fact they contain, or have a material risk of defects which could cause a Product user to lose their data;

    b.    Cal. Civ. Code §1770(a)(7), by negligently, recklessly, and/or intentionally representing that the SanDisk SSDs were of a particular standard, quality, or grade, when they were of another;

    c.    Cal. Civ. Code §1770(a)(9), by negligently, recklessly, and/or intentionally advertising the SanDisk SSDs with intent not to sell them as advertised; and

    d.    Cal. Civ. Code §1770(a)(16), by representing that the SanDisk SSDs have been supplied in accordance with previous representations when they have not.

157. Defendants were obligated to disclose the presence of, and material risk of, defects in the SanDisk SSDs because: (a) Defendants had exclusive knowledge of the presence of defects in the SanDisk SSDs that were not known or reasonably accessible to Plaintiff Wang and members of the California Subclass; (b) Defendants actively concealed the presence of defects in the SanDisk SSDs from Plaintiff Wang and members of the California Subclass; and (c) Defendants made partial statements on the SanDisk SSDs labels and packaging that gave the misleading impression to reasonable consumers, including Plaintiff Wang and members of the

California Subclass, without further information on the presence of defects that had not been disclosed.

158.    Plaintiff Wang and members of the California Subclass relied on Defendants' representations when purchasing the SanDisk SSDs.

159.    Plaintiff Wang and members of the California Subclass were deceived by Defendants' deceptive, fraudulent, and unconscionable acts and practices in that had they known the truth they would not have purchased the SanDisk SSDs or would have paid less for the SanDisk SSDs.

160.    As a direct and proximate result of these violations, Plaintiff Wang and members of the California Subclass have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the SanDisk SSDs.

161.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff Wang and members of the California Subclass in the form of the loss or diminishment of value of the SanDisk SSDs Plaintiffs and the California Subclass purchased, which allowed Defendants to profit at the expense of Plaintiffs and the California Subclass.

162.    Plaintiff Wang and members of the California Subclass seek relief for the injuries they have suffered because of Defendants' practices, as provided by the CLRA and applicable law.

163.    In addition, Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiffs and California Subclass, such that prospective injunctive relief is necessary.

**CLAIM 8**
**CALIFORNIA'S FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code §§17500 *et seq.***
**(On behalf of Plaintiff Wang and the California Subclass)**

164.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

1    165.    California's False Advertising Law prohibits any statement in connection with the

2    sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

3    166.    Defendants' untrue and misleading statements significantly impacted the public

4    because Defendants sells the SanDisk SSDs nationwide, including in California, and there are

5    millions of consumers of the SanDisk SSDs, including Plaintiff Wang and members of the

6    California Subclass.

7    167.    As set forth herein, Defendants' claims that the SanDisk SSDs were and are of a

8    certain quality and fit for their intended use by individuals were and are false because the

9    SanDisk SSDs in fact contain, or have a material risk of containing, defects, which could cause a

10   user to suffer substantial loss of personal data from use of the SanDisk SSDs and were likely to

11   deceive the public.

12   168.    Defendants' claims that the SanDisk SSDs were and are fit for use by individuals

13   were and are untrue and misleading because they failed to mention the presence of defects,

14   which could cause a product user to suffer adverse substantial loss of personal data from use of

15   the SanDisk SSDs.

16   169.    Defendants' representations and omissions were material because they were likely

17   to deceive reasonable consumers to induce them to purchase the SanDisk SSDs without being

18   aware that the SanDisk SSDs contained or had a material risk of containing defects.

19   170.    Defendants knew, or reasonably should have known, that all these claims were

20   untrue or misleading and likely to deceive the public.

21   171.    As a direct and proximate result of Defendants' false advertising, Plaintiff Wang

22   and members of the California Subclass have been harmed, and that harm will continue unless

23   Defendants are enjoined from using the misleading marketing described herein in any manner in

24   connection with the advertising and sale of the SanDisk SSDs.

25   172.    As a direct and proximate result of Defendants' false advertising, Plaintiff Wang

26   and members of the California Subclass suffered damages by purchasing the SanDisk SSDs

27

28

1    because they received a product that was worthless, and/or worth less, because it contains, or has

2    a material risk of containing, defects, and they would not have purchased or would have paid less

3    for the SanDisk SSDs had they known this fact.

4        173.    Defendants' false advertising caused injury in fact and actual damages to

5    Plaintiffs and the members of the Class and Subclasses in the form of the loss or diminishment of

6    value of the SanDisk SSDs Plaintiffs and the California Subclass purchased, which allowed

7    Defendants to profit at the expense of Plaintiff Wang and the California Subclass.

8        174.    Defendants' unlawful conduct is continuing, with no indication of Defendants'

9    intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Wang

10    and members of the California Subclass, such that prospective injunctive relief is necessary.

11    Plaintiff Wang and members of the California Subclass are entitled to injunctive and equitable

12    relief and restitution in the amount they spent on the SanDisk SSDs, as well as any other just and

13    proper relief, pursuant to Cal. Bus. & Prof. Code §17535 and applicable law.

14

15    **CLAIM 9**
**CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §17200 *et seq*.**

16    **(On behalf of Plaintiff Wang and the California Subclass)**

17        175.    Plaintiff Wang incorporates the foregoing allegations as if fully set forth herein.

18        176.    SanDisk and Western Digital are each a "person" as defined by Cal. Bus. & Prof.

19    Code §17201.

20        177.    The California Unfair Competition Law prohibits any "unlawful, unfair or

21    fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

22        178.    For the reasons discussed herein, Defendants violated and continue to violate

23    California's Unfair Competition Law by engaging in the herein described fraudulent, deceptive,

24    unfair acts or practices proscribed by Cal. Bus. & Prof. Code §17200 *et seq*. Defendants' acts

25    and practices, including their material omissions, described herein, were likely to, and did in fact,

26

27

28

1  deceive and mislead members of the public, including consumers acting reasonably under the

2  circumstances, to their detriment.

3      179.   Defendants fraudulently represented that the SanDisk SSDs were and are fit for

4  use by individuals when in fact they contain, or have a material risk of containing, defects, which

5  could cause a Product user to lose substantial personal data from use of the SanDisk SSDs.

6      180.   As alleged herein, Defendants unlawfully advertised the SanDisk SSDs using

7  false or misleading claims, such that Defendants' actions as alleged herein violate at least the

8  following laws:

9          a.   California Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

10          b.   California False Advertising Law, Cal. Bus. & Prof. Code §17500*, et seq.*

11     181.   Defendants' conduct with respect to the labeling, packaging, advertising,

12  marketing, and sale of the SanDisk SSDs is also unfair because it violates public policy as

13  declared by specific constitutional, statutory, or regulatory provisions, including, but not limited

14  to, the California Consumers Legal Remedies Act and the California False Advertising Law.

15     182.   Defendants' conduct with respect to the labeling, packaging, advertising,

16  marketing, and sale of the SanDisk SSDs is also unfair because the consumer injury is

17  substantial, not outweighed by benefits to consumers or competition, and not one that consumers,

18  themselves, can reasonably avoid.

19     183.   As a direct and proximate result of Defendants' false advertising, Plaintiff Wang

20  and members of the California Subclass have been harmed, and that harm will continue unless

21  Defendants are enjoined from using the misleading marketing described herein in any manner in

22  connection with the advertising and sale of the SanDisk SSDs.

23     184.   As a direct and proximate result of Defendants' fraudulent, unfair, and unlawful

24  practices, Plaintiff Wang and members of the California Subclass suffered damages by

25  purchasing the SanDisk SSDs because they received a product that was worthless, and/or worth

26

27

28

CLASS ACTION COMPLAINT                                            37

1    less, because it contains, or has a material risk of containing, defects, and they would not have

2    purchased or would have paid less for the SanDisk SSDs had they known this fact.

3    185.    Defendants' fraudulent, unfair, and unlawful practices caused injury in fact and

4    actual damages to Plaintiff Wang and members of the California Subclass in the form of the loss

5    or diminishment of value of the SanDisk Plaintiff Wang and members of the California Subclass

6    purchased, which allowed Defendants to profit at the expense of Plaintiff Wang and members of

7    the California Subclass.

8    186.    In accordance with Cal. Bus. & Prof. Code §17203, Plaintiff Wang and members

9    of the California Subclass seek an order enjoining Defendants from continuing to conduct

10    business through fraudulent, unfair, or unlawful acts and practices. Defendants' misconduct is

11    continuing, with no indication of Defendants' intent to continue this fraudulent, unlawful, and

12    unfair course of conduct, posing a threat of future harm to Plaintiff Wang and members of the

13    California Subclass, such that prospective injunctive relief is necessary.

14    187.    Plaintiff Wang and members of the California Subclass also seek an order for the

15    restitution of all monies from the sale of the SanDisk SSDs, which were unjustly acquired

16    through acts of fraudulent, unfair, or unlawful acts and practices, as well as any other just and

17    proper relief, pursuant to Cal. Bus. & Prof. Code §17203 and applicable law.

18

19    **CLAIM 10**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. Ann. §42-110a, et seq.**

20    **(On behalf of Plaintiff Camp and the Connecticut Subclass)**

21    188.    Plaintiff Camp incorporates the foregoing allegations as if fully set forth herein.

22    189.    Plaintiff Camp and members of the Connecticut Subclass are, or were, residents

23    of Connecticut.

24    190.    Plaintiff Camp, SanDisk, Western Digital and each member of the Connecticut

25    Subclass are each a "person" as defined by Conn. Gen. Stat. Ann. ("CGSA") §42-110a(3).

26

27

28

CLASS ACTION COMPLAINT                                                                38

191.    Plaintiff Dana and members of the Connecticut Subclass are actual or potential consumers of SanDisk SSDs purchased in Connecticut.

192.    At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Connecticut as defined by C.G.S.A. §42-110a(4), in that it engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

193.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. §42-110b(a).

194.    For the reasons discussed herein, Defendants violated and continue to violate CUPTA by engaging in the herein described deceptive or unfair acts or practices proscribed by C.G.S.A. §42-110a, *et seq*. Defendants' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive, and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

195.    Defendants repeatedly advertised on the labels for the SanDisk SSDs, on its websites, and through national advertising campaigns, among other items, that the SanDisk SSDs were of a certain quality, fast, rugged, reliable, and fit for their intended use and purpose. Defendants failed to disclose the material information that the SanDisk SSDs contained or materially risked containing defects that caused substantial loss of personal data.

196.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the SanDisk SSDs without being aware that the SanDisk SSDs contained or materially risked containing defects that caused substantial loss of personal data. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Camp and the members of the Connecticut Subclass suffered damages by purchasing the SanDisk SSDs in reliance on Defendants' statements because they would not have purchased the SanDisk SSDs had they known the truth, and they received a

product that was worthless, and/or worth less, because it contains or materially risks containing such defects.

197.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff Camp and members of the Connecticut Subclass in the form of loss or diminishment of value of the SanDisk SSDs Plaintiff Camp and members of the Connecticut Subclass purchased, which allowed Defendants to profit at the expense of Plaintiff Camp and members of the Connecticut Subclass.  The injuries to Plaintiff Camp and members of the Connecticut Subclass were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

198.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Camp and members of the Connecticut Subclass, such that prospective injunctive relief is necessary. Plaintiff Camp and members of the Connecticut Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, including, but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and cost, as well as any other just and proper relief, pursuant to C.G.S.A.§42-110g and applicable law.

## CLAIM 11
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §501.201, *et seq.***
**(On behalf of Plaintiff DeBonis and the Florida Subclass)**

199.    Plaintiff DeBonis incorporates the foregoing allegations as if fully set forth herein.

200.    Plaintiff DeBonis and members of the Florida Subclass are, or were, residents of Florida and/or made purchases of SanDisk SSDs in Florida.

201.     Plaintiff DeBonis and members of the Florida Subclass are "consumers," as defined by Fla. Stat. §501.203(7), and the products sold by Defendants are "goods" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

202.     FDUTPA, Fla. Stat. §501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

203.     For the reasons discussed herein, Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, and unfair acts or practices proscribed by Fla. Stat. §501.201, *et seq*. Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

204.     At all times mentioned herein, Defendants engaged in trade or commerce in Florida, as defined by Fla. Stat. §501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

205.     Defendants repeatedly advertised on the labels for SanDisk SSDs, on their websites, and through national advertising campaigns, among other items, that SanDisk SSDs would have the qualities, characteristics, and suitability for use. Defendants failed to disclose the material information that SanDisk SSDs contained or materially risked containing defects which cause substantial loss of personal data.

206.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware the SanDisk SSDs contained or materially risked containing these defects. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff DeBonis and members of the Florida Subclass suffered damages by purchasing SanDisk SSDs because they

1   would not have purchased SanDisk SSDs had they known the truth, and they received a product

2   that was worthless and/or worth less, because it contains or materially risks containing defects

3   which cause substantial loss of personal data.

4           207.    Defendants' deceptive trade practices caused injury in fact and actual damages to

5   Plaintiff DeBonis and members of the Florida Subclass in the form of the loss of diminishment

6   of value of SanDisk SSDs Plaintiff DeBonis and members of the Florida Subclass purchased,

7   which allowed Defendants to profit at the expense of Plaintiff DeBonis and members of the

8   Florida Subclass.  The injuries to Plaintiff DeBonis and members of the Florida subclass were to

9   legally protected interests.  The gravity of the harm of Defendants' actions is significant and

10  there is no corresponding benefit to consumers of such conduct.

11          208.    Defendants' unlawful conduct is continuing, with no indication of Defendants'

12  intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff

13  DeBonis and members of the Florida Subclass, such that prospective injunctive relief is

14  necessary.

15          209.    Plaintiff DeBonis and members of the Florida Subclass seek relief for the injuries

16  they have suffered as a result of Defendants' unfair and deceptive acts and practices, including

17  but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief,

18  attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Fla. Stat.

19  §501.211 and applicable law.

20                                     **COUNT 12**
21                          **GEORGIA FAIR BUSINESS PRACTICES ACT**
                                  **O.C.G.A. §10-1-390,** *et seq.*
22              **(On behalf of Plaintiff McGuinness and the Georgia Subclass)**

23          210.    Plaintiff McGuinness incorporates the foregoing allegations as if fully set forth

24  herein.

25          211.    Plaintiff McGuinness and members of the Georgia Subclass are or were residents

26  of Georgia and/or made purchases of SanDisk SSDs in Georgia.

27

28

CLASS ACTION COMPLAINT                                                                          42

1    212.    Plaintiff McGuinness and members of the Georgia Subclass are "consumers"

2    within the meaning of O.C.G.A. §10-1-392(6).

3    213.    Plaintiff McGuinness's and members of the Georgia Subclass's purchases of

4    SanDisk SSDs are "consumer transactions" within the meaning of O.C.G.A. §10-1-392(10).

5    214.    At all times mentioned herein, Defendants engaged in trade or commerce in

6    Georgia, as defined by O.C.G.A. §10-1-392(28), in that they advertised, distributed, offered for

7    sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce

8    directly or indirectly affecting the people of Georgia.

9    215.    O.G.C.A. §10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the

10    conduct of consumer transactions and consumer acts or practices in trade or commerce are

11    declared unlawful."

12    216.    Defendants engaged in unlawful, unfair, and deceptive acts or practices in the

13    conduct of consumer transactions in trade or commerce, in violation of O.C.G.A. §§10-1-390, *et*

14    *seq.*, including but not limited to the following:

15          a.    Caused actual confusion or actual misunderstanding as to the source,

16              sponsorship, approval, or certification of its SanDisk SSDs, in violation of

17              O.C.G.A. §10-1-393(b)(2);

18          b.    Made a false representation as to the sponsorship, approval,

19              characteristics, ingredients, uses, or benefits of SanDisk SSDs, in violation

20              of O.C.G.A. §10-1-393(b)(5);

21          c.    Represented that SanDisk SSDs are of a particular standard, quality, or

22              grade when Defendants knew or should have known they contained or

23              materially risked containing defects which caused the substantial loss of

24              personal data, in violation of O.C.G.A. §10-1-393(b)(7); and

25          d.    Advertised SanDisk SSDs with an intent not to sell them as advertised, in

26              violation of O.C.G.A. §10-1-393(b)(9).

27

28

217.    Defendants repeatedly advertised on the packaging for SanDisk SSDs, on their websites, and through national advertising campaigns, among other items, that SanDisk SSDs were fast, rugged, reliable, and of a certain quality.  Defendants failed to disclose the material information that SanDisk SSDs contained or materially risked containing defects which caused the significant loss of personal data.

218.    Defendants' representations and omissions were material because they were likely to cause reasonable consumers to rely on them and to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware that SanDisk SSDs contained or materially risked containing these defects. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff McGuinness and members of the Georgia Subclass suffered damages by purchasing SanDisk SSDs because they would not have purchased SanDisk SSDs had they known the truth, and they received a product that was worthless and/or worth less, because it contains or materially risked containing defects which caused substantial loss of personal data.

219.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff McGuinness and members of the Georgia Subclass in the form of the loss or diminishment of value of SanDisk SSDs Plaintiff McGuinness and members of the Georgia Subclass purchased, which allowed Defendants to profit at the expense of Plaintiff McGuinness and members of the Georgia Subclass.  The injuries to Plaintiff McGuinness and members of the Georgia Subclass were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

220.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff McGuinness and members of the Georgia Subclass, such that prospective injunctive relief is necessary.

221.    Plaintiff McGuinness and members of the Georgia Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, including but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by O.C.G.A. §10-1-399 and applicable law.

**COUNT 13**
**MISSOURI MERCHANDISE PRACTICES ACT**
**Mo. Rev. Stat. §§407.010, *et seq.***
**(On behalf of Plaintiff Kirkbride and the Missouri Subclass)**

222.    Plaintiff Kirkbride incorporates the foregoing allegations as if fully set forth herein.

223.    Plaintiff Kirkbride and members of the Missouri Subclass are or were residents of Missouri and/or purchased SanDisk SSDs in Missouri.

224.    Plaintiff Kirkbride, SanDisk, Western Digital, and members of the Missouri Subclass are each a "person" as defined by Mo. Rev. Stat. §401.010(5).

225.    At all times mentioned herein, Defendants engaged in "trade" or "commerce" affecting Missouri, as defined by Mo. Rev. Stat. §407.010(7), in that they advertised, offered for sale, sold and distributed goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "property," "article[s]," "commodity[ies]" or "thing[s] of value" in Missouri.

226.    Plaintiff Kirkbride and members of the Missouri Subclass purchased SanDisk SSDs, which is "merchandise" within the meaning of Mo. Rev. Stat. §407.010(4), "primarily for personal, family or household purposes." Mo. Rev. Stat. §407.025(1).

227.    The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §407.020, provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of

1   any material fact in connection with the sale or advertisement of any merchandise in trade or

2   commerce…in the state of Missouri, is declared to be an unlawful practice."

3          228.    For the reasons discussed herein, Defendants violated and continue to violate the

4   MMPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices

5   proscribed by Mo. Rev. Stat. §407.020 et seq. Defendants' acts and practices, including their

6   material omissions, described herein, were likely to, and did in fact, deceive and mislead

7   members of the public, including consumers acting reasonably under the circumstances, to their

8   detriment.

9          229.    Defendants repeatedly advertised on the packaging for SanDisk SSDs, on their

10  website, and through national advertising campaigns, among other times, that SanDisk SSDs

11  were and are fast, rugged, reliable, and of a certain quality.  Defendants failed to disclose the

12  material information that SanDisk SSDs contained or materially risked containing defects which

13  caused substantial loss of personal data.

14         230.    Defendants' representations and omissions were material because they were likely

15  to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware

16  that SanDisk SSDs contained or materially risked containing defects which caused substantial

17  loss of personal data. As a direct and proximate result of Defendants' unfair and deceptive acts

18  or practices, Plaintiff Kirkbride and members of the Missouri Subclass suffered ascertainable

19  damages by purchasing SanDisk SSDs because they would not have purchased SanDisk SSDs

20  had they known the truth, and they received a product that was worthless and/or worth less,

21  because it contains or materially risks containing defects which cause substantial loss of personal

22  data, resulting in the loss of money or property.

23         231.    Defendants' deceptive trade practices caused injury in fact and actual damages to

24  Plaintiff Kirkbride and members of the Missouri Subclass in the form of the loss or

25  diminishment of value of SanDisk SSDs Plaintiff Kirkbride and members of the Missouri

26  Subclass purchased, which allowed Defendants to profit at the expense of Plaintiff Kirkbride and

27

28

members of the Missouri Subclass. The injuries to Plaintiff Kirkbride and members of the Missouri Subclass were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

232.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Kirkbride and members of the Missouri Subclass, such that prospective injunctive relief is necessary.

233.    Plaintiff Kirkbride and members of the Missouri Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive act and practices, including but not limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Mo. Rev. Stat. §407.025 and applicable law.

**COUNT 14**
**NEW YORK CONSUMER PROTECTION LAW**
**N.Y. Gen. Bus. Law §349**
**(On behalf of Plaintiff Adair and the New York Subclass)**

234.    Plaintiff Adair incorporates the foregoing allegation as if fully set forth herein.

235.    Plaintiff Adair and members of the New York Subclass are or were residents of New York and purchased the SanDisk SSDs in New York.

236.    Plaintiff Adair and members of the New York Subclass are actual or potential consumers of SanDisk SSDs.

237.    At all times mentioned herein, Defendants engaged in "trade" or "commerce" in New York in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New York.

238.    N.Y. Gen. Bus Law §349(a) provides "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishings of any service in this state are hereby declared unlawful."

239.    For the reason discussed herein, Defendants violated and continue to violate N.Y. Gen. Bus. Law §349 by engaging in the herein described deceptive or unfair acts or practices proscribed by N.Y. Gen. Bus. Law §349. Defendants' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

240.    Defendants' deceptive trade practices significantly impacted the public because Defendants sell SanDisk SSDs nationwide, including in New York, and there are millions of consumers of SanDisk SSDs, including Plaintiff Adair and members of the New York Subclass.

241.    Defendants repeatedly advertised on the labels for the SanDisk SSDs, on their websites, and through national advertising campaigns, among other times, that the SanDisk SSDs were fast, rugged, reliable, and fit for a particular use. Defendants failed to disclose the material information that the SanDisk SSDs contained or materially risked containing defects which caused substantial loss of personal data.

242.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the SanDisk SSDs without being aware that SanDisk SSDs contained or materially risked containing defects which caused substantial loss of personal data. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Adair and members of the New York Subclass suffered damages by purchasing the SanDisk SSDs because they would not have purchased the SanDisk SSDs had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or materially risked containing defects which cause substantial loss of personal data.

243.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff Adair and members of the New York Subclass in the form of the loss of diminishment of value of the SanDisk SSDs Plaintiff Adair and members of the New York Subclass purchased, which allowed Defendants to profit at the expense of Plaintiff Adair and members of the New

1    York Subclass. The injuries to Plaintiff Adair and members of the New York Subclass were to

2    legally protected interests. The gravity of the harm of Defendants' actions is significant and there

3    is no corresponding benefit to consumers of such conduct.

4        244.    Defendants' conduct is ongoing and continuing, such that prospective injunctive

5    relief is necessary pursuant to N.Y. Gen. Bus. Law §349(h), with no indication of Defendants'

6    intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Adair

7    and members of the New York Subclass, such that prospective injunctive relief is necessary.

8        245.    Plaintiff Adair and members of the New York Subclass seek actual damages and

9    attorneys' fees and are entitled to injunctive and equitable relief for the injuries they have

10   suffered as a result of Defendants' unfair and deceptive acts and practices, including, but not

11   limited to, actual damages, restitution, penalties, injunctive and declaratory relief, attorneys' fees

12   and/or costs, as a well as any other just and proper relief, as provided by N.Y. Gen. Bus. Law

13   §349 and applicable law.

14
                                    **COUNT 15**
                      **OHIO CONSUMER SALES PRACTICES ACT,**
15                      **Ohio Rev. Code Ann. §1345.01, *et seq*.**
                      **(On behalf of Plaintiff Gary and the Ohio Subclass)**
16

17       246.     Plaintiff Gary incorporates the foregoing allegations as if fully set forth herein.

18       247.    Plaintiff Gary and members of the Ohio Subclass are or were residents of Ohio

19   and purchased SanDisk SSDs in Ohio.

20       248.    Plaintiff Gary and members of the Ohio Subclass are "consumers" within the

21   meaning of Ohio Rev. Code Ann. §1345.01(D) that engaged in "consumer transactions" as

22   defined by Ohio Rev. Code Ann. §1345.01(A) with Defendants when they purchased SanDisk

23   SSDs.

24       249.     At all times mentioned herein, Defendants were a "supplier" as defined by Ohio

25   Rev. Code Ann. §1345.01(C), in that they were a "seller" that was "engaged in the business of

26   effecting or soliciting consumer transactions" in Ohio.

27

28

1    250.    The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann.

2  §1345.02, provides that "[n]o supplier shall commit an unfair or deceptive act or practice in

3  connection with a consumer transaction" and that "[s]uch an unfair or deceptive act or practice

4  by a supplier violates this section whether it occurs before, during, or after the transaction."

5    251.    Defendants engaged in deceptive, unfair, and unlawful trade acts or practices, in

6  the course of consumer transactions, in violation of Ohio Rev. Code Ann. §1345.02, including

7  but not limited to the following:

8        a.    Made a false representation that they knew or should have known was

9            false as to the sponsorship, approval, performance, characteristics,

10           accessories, uses or benefits of SanDisk SSDs, in violation of Ohio Rev.

11           Code Ann. §1345.02(1);

12       b.     Represented that SanDisk SSDs are of a particular standard, quality

13           grade, style or model when Defendants knew or should have known they

14           were of another, in violation of Ohio Rev. Code Ann. §§1345.02(2);

15       c.    Represented that SanDisk SSDs are fast, rugged, and reliable when they

16           knew or should have known SanDisk SSDs contained or materially risked

17           containing defects which caused substantial loss of personal data; and

18       d.    Failed to disclose the material information that SanDisk SSDs contained

19           or materially risked containing defects which caused substantial loss of

20           personal data when such failure to disclose such information was intended

21           to induce Plaintiff Gary and the members of the Ohio Subclass to enter

22           into transactions to purchase SanDisk SSDs.

23    252.    As detailed herein, Defendants' deceptive trade practices significantly impacted

24  the public because Defendants sell SanDisk SSDs nationwide, including in Ohio, and there are

25  millions of actual or potential customers of SanDisk SSDs, including Plaintiff Gary and members

26  of the Ohio Subclass.

27

28

CLASS ACTION COMPLAINT                                                    50

1    253.    Defendants' representations and omissions were material because they were likely

2  to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware

3  that SanDisk SSDs contained or had a material risk of containing defects which caused

4  substantial loss of personal data.

5    254.    As a direct and proximate result of Defendants' unfair and deceptive acts or

6  practices, Plaintiff Gary and members of the Ohio Subclass suffered damages by purchasing

7  SanDisk SSDs because they would not have purchased SanDisk SSDs had they known the truth,

8  and they received a product that was worthless, and/or worth less, because it contains or has

9  material risk of containing defects which cause the substantial loss of personal data.

10    255.    Defendants' deceptive trade practices caused injury in fact and actual damages to

11  Plaintiff Gary and members of the Ohio Subclass in the form of loss or diminishment of value of

12  SanDisk SSDs Plaintiff Gary and members of the Ohio Subclass purchased, which allowed

13  Defendants to profit at the expense of Plaintiff Gary and members of the Ohio Subclass. The

14  injuries to Plaintiff Gary and members of the Ohio Subclass were to legally protected interests.

15  The gravity of the harm of Defendants' actions is significant and there is no corresponding

16  benefit to consumers of such conduct.

17    256.    Defendants' unlawful conduct is continuing, with no indication of Defendants'

18  intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Gary

19  and members of the Ohio Subclass, such that prospective injunctive relief is necessary.

20    257.    Plaintiff Gary and members of the Ohio Subclass seek relief for the injuries they

21  have suffered as a result of Defendants' unfair, unlawful, and deceptive acts and practices,

22  including but not limited to, actual damages, statutory damages, restitution, penalties, injunctive

23  relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to Ohio

24  Rev. Code Ann. §1345.09 and applicable law.

25

26

27

28

**COUNT 16**
**OHIO DECEPTIVE TRADE PRACTICES ACT,**
**Ohio Rev. Code §4165.01,** *et seq.*
**(On behalf of Plaintiff Gary and the Ohio Subclass)**

258.    Plaintiff Gary incorporates the foregoing allegations as if fully set forth herein.

259.    Plaintiff Gary, SanDisk, Western Digital and members of the Ohio Subclass are each a "person" as defined by Ohio Rev. Code §4165.01(D).

260.    Ohio's Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code §4165.02, prohibits any deceptive trade practices when "in the course of a person's business, vocation, or occupation, the person does any of the following," including but not limited to:

    a.    Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

    b.    Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

    c.    Advertises goods or services with intent not to sell them as advertised; or

    d.    Makes false statements of facts concerning the reasons for, existence of, or amounts of price reductions.

261.    Defendants engaged in deceptive, unfair, and unlawful trade acts or practices, in the course of consumer transactions, in violation of Ohio Rev. Code §4165.02, including but not limited to the following:

    a.    Made a false representation that they knew or should have known was false as to the sponsorship, approval, performance, characteristics, accessories, uses or benefits of SanDisk SSDs, in violation of Ohio Rev. Code §4165.02(A)(2);

b.      Represented that SanDisk SSDs are of a particular standard, quality grade, style or model when Defendants knew or should have known they were of another, in violation of Ohio Rev. Code §4165.02(A)(9);

c.      Represented that SanDisk SSDs are fast, rugged, and reliable when they knew or should have known SanDisk SSDs contained or materially risked containing defects which caused substantial loss of personal data; and

d.      Failed to disclose the material information that SanDisk SSDs contained or materially risked containing defects which caused substantial loss of personal data when such failure to disclose such information was intended to induce Plaintiff Gary and the members of the Ohio Subclass to enter into transactions to purchase SanDisk SSDs.

262.    As detailed herein, Defendants' deceptive trade practices significantly impacted the public because Defendants sell SanDisk SSDs nationwide, including in Ohio, and there are millions of actual or potential customers of SanDisk SSDs, including Plaintiff Gary and members of the Ohio Subclass.

263.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware that SanDisk SSDs contained or had a material risk of containing defects which caused substantial loss of personal data.

264.    As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff Gary and members of the Ohio Subclass suffered damages by purchasing SanDisk SSDs because they would not have purchased SanDisk SSDs had they known the truth, and they received a product that was worthless, and/or worth less, because it contains or has material risk of containing defects which cause the substantial loss of personal data.

265.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff Gary and members of the Ohio Subclass in the form of loss or diminishment of value of

1    SanDisk SSDs Plaintiff Gary and members of the Ohio Subclass purchased, which allowed

2    Defendants to profit at the expense of Plaintiff Gary and members of the Ohio Subclass. The

3    injuries to Plaintiff Gary and members of the Ohio Subclass were to legally protected interests.

4    The gravity of the harm of Defendants' actions is significant and there is no corresponding

5    benefit to consumers of such conduct.

6        266.    Defendants' unlawful conduct is continuing, with no indication of Defendants'

7    intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiff Gary

8    and members of the Ohio Subclass, such that prospective injunctive relief is necessary.

9        267.    Plaintiff Gary and members of the Ohio Subclass seek relief for the injuries they

10    have suffered as a result of Defendants' unfair, unlawful, and deceptive acts and practices,

11    including but not limited to, actual damages, statutory damages, restitution, penalties, injunctive

12    relief, attorneys' fees, and/or costs, as well as any other just and proper relief, pursuant to Ohio

13    Rev. Code §4165.03 and applicable law.

14                              **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray

16    for judgment against Defendants as to each count, including:

17        A.    An order certifying this action as a class action, certifying the Class and

18    Subclasses requested herein, designating Plaintiffs as the representatives of the Class and

19    Subclasses, appointing Plaintiffs' counsel as counsel to the Class and Subclasses, and requiring

20    Defendants to bear the costs of a class action;

21        B.    An order declaring that Defendants' actions constitute: (i) breach of express

22    warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent

23    misrepresentation; (iv) fraud by omission; (v) negligent misrepresentation; (vi) unjust

24    enrichment; and (vii) unfair and deceptive business practices in violation of the identified state

25    law consumer protection statutes, and that Defendants are liable to Plaintiffs, members of the

26    Class, and members of the Subclasses, as described herein, for the relief arising therefrom;

27

28

1    C.    An order enjoining Defendants from selling the SanDisk SSDs until defects are

2 eliminated or full disclosure of the presence of defects appears on all labels, packaging, and

3 advertising, and requiring Defendants to remove any defects which cause, among other things,

4 the substantial loss of personal data;

5    D.    An order awarding declaratory relief, and any further retrospective or prospective

6 injunctive relief permitted by law or equity, including enjoining Defendants from continuing the

7 unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

8    E.    A judgment awarding Plaintiffs and members of the Classes and Subclasses all

9 appropriate economic, monetary, actual, statutory, consequential damages, in an amount to be

10 determined at trial;

11    F.    A judgment awarding Plaintiff and members of the Class and Subclasses

12 restitution and/or disgorgement of all profits and unjust enrichment that Defendants obtained

13 from Plaintiffs and members of the Class and Subclasses as the result of its unlawful, unfair,

14 fraudulent business practices described herein;

15    G.    A judgment awarding Plaintiffs and members of the Classes and Subclasses

16 prejudgment and post-judgment interest, as permitted by law;

17    H.    A judgment awarding Plaintiffs and members of the Class and Subclasses

18 punitive damages, as allowed by law;

19    I.    A judgment awarding Plaintiffs and members of the Classes and Subclasses costs

20 and fees, including attorneys' fees, as permitted by law; and

21    J.    For such further relief that the Court may deem just and proper.

22                         **DEMAND FOR JURY TRIAL**

23    Plaintiffs demand a trial by jury for all issues so triable.

24

25

26

27

28

CLASS ACTION COMPLAINT                                                              55

DATED:  September 19, 2023            Respectfully submitted,

**BERMAN TABACCO**

By:    */s/ Todd A. Seaver*
                Todd A. Seaver

Matthew D. Pearson
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Email: tseaver@bermantabacco.com
         mpearson@bermantabacco.com

Ian W. Sloss
Johnathan Seredynski
Brett L. Burgs
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Telephone: (203) 425-4491
Email: isloss@sgtlaw.com
       jseredynski@sgtlaw.com
       bburgs@sgtlaw.com

1   Todd A. Seaver (SBN 271067)
    Matthew D. Pearson (SBN 235339)
2   **BERMAN TABACCO**
    425 California Street, Suite 2300
3   San Francisco, CA 94104
    Telephone: (415) 433-3200
4   Email:  tseaver@bermantabacco.com
              mpearson@bermantabacco.com
5
    *Attorneys for Plaintiffs*
6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NORTHERN CALIFORNIA**

10
    TOM GARY, SEAN ADAIR, DANA CAMP,
11  MATTHEW DEBONIS, SHAWN                        Case No.
    KIRKBRIDE, JOSEPH MCGUINNESS, and
12  LI WANG individually and on behalf of all     <u>CLASS ACTION</u>
    others similarly situated,
13                                                **AFFIDAVIT IN SUPPORT OF VENUE**
                                                  **PURSUANT TO CALIFORNIA CIVIL**
14                    Plaintiffs,                 **CODE SECTION 1780(d)**
    v.
15
    SANDISK LLC; WESTERN DIGITAL
16  CORPORATION; WESTERN DIGITAL
    TECHNOLOGIES, INC.,
17
                      Defendants.
18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT IN SUPPORT OF VENUE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)

1

**AFFIDAVIT OF TODD A. SEAVER**

2        I, Todd A. Seaver, state and declare as follows:

3        1.        I am an attorney duly admitted to practice law in the State of California. I make

4 this affidavit pursuant to California Civil Code Section 1780(d). The facts contained in this

5 affidavit are true and correct to the best of my knowledge, information, and belief.

6        2.        The complaint in this action is filed in the proper place for trial of this action

7 because Defendants' main offices are in Milpitas, California and San Jose, California, both in

8 Santa Clara County; Defendants conduct substantial business within Santa Clara County; and the

9 events, acts, and omissions that are subject to any claim in this matter occurred, in substantial

10 part, within Santa Clara County. Therefore, the appropriate venue for this matter is the U.S.

11 District Court for the Northern District of California, San Jose Division.

12        I declare under penalty of perjury under the laws of the State of California that the

13 foregoing is true and correct to the best of my knowledge, information and belief.

14        Executed this 19th day of September, 2023, in San Francisco, California.

15

16                                                            */s/ Todd A. Seaver*
                                                            _____

17                                                            Todd A. Seaver

18

19

20

21

22

23

24

25

26

27

28